IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRYAN ALFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 2:10-cv-00331-JEO |
| r4 VASCULAR, INC. and ) | |
| EHAB ALI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a diversity action that was removed from the Circuit Court of Jefferson County, Alabama. It is before this court on three motions. The first is a motion for judgment on the pleadings filed by the defendants, r4 Vascular, Inc. and Ehab Ali ("the defendants"), pursuant to Rule 12(c) of the FEDERAL RULES OF CIVIL PROCEDURE. (Doc.[1] 9). It seeks dismissal of the complaint filed by the plaintiff, Bryan Alford ("the plaintiff" or "Alford"), on the grounds that the plaintiff's claims for breach of contract and fraudulent misrepresentation/suppression fail as a matter of law, because the allegations of the complaint demonstrate that the plaintiff's employment with r4 Vascular ("r4") was at-will and that the plaintiff had no reasonable expectation of employment for any particular term. The second motion is defendant Ali's ("Ali") motion to dismiss the action as against him for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, which is premised on the ground that the exercise of personal jurisdiction over him would violate the United States Constitution. (Doc. 8). The third motion is the plaintiff's motion to stay the court's ruling on Ali's motion to dismiss of

---

[1] References to "Doc(s).__" are to the documents as numbered by the clerk of court in the court's record of the case.

lack of personal jurisdiction in order to conduct discovery. (Doc. 13). For the reasons set out below, the court finds that the defendants' Rule 12(c) motion to dismiss is due to be denied in part and granted in part, the plaintiff's motion to stay is moot, and Ali's motion to dismiss for lack of personal jurisdiction is due to be denied without prejudice.

I.    BACKGROUND

   A.    Procedural History

The plaintiff filed his lawsuit against the defendants in Jefferson County, Alabama Circuit Court, asserting claims for breach of contract and fraudulent misrepresentation or suppression premised on the defendants' purported misrepresentations regarding the plaintiff's compensation, the status and quality of r4's products, and the financial stability of r4, as well as the defendants' failure to disclose to the plaintiff that they had no intention of allowing him (the plaintiff) to operate under the employment contract as originally agreed upon. (Doc. 1). The defendants removed the action to this court pursuant to 28 U.S.C. §§ 1332, 1441 & 1446. (*Id.*) The defendants now request that this court dismiss both claims against them (doc. 9), and defendant Ali separately seeks a dismissal of this action as against him for lack of personal jurisdiction (doc. 8). The plaintiff opposes the defendants' motion to dismiss, and moves to stay the court's ruling on Ali's motion so as to allow additional time for discovery. (Doc. 12 & 13).

   B.    Statement of Facts[2]

In August 2009, the plaintiff was recruited by r4 as a sales representative of vascular

---

[2] When considering a Rule 12(c) motion, a court must accept the facts alleged in the complaint as true, and construe them in the light most favorable to the nonmoving party. *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). As such, for the purposes of this court's ruling, all facts contained in this section have come directly from the plaintiff's complaint, and are taken as true.

access products.  At the time, the plaintiff worked as a sales representative for Zonare Medical Systems, Inc. ("Zonare") and as a part-time consultant for Medical Components, Inc. ("Medcomp").  During the interview process, the plaintiff expressed his concerns to Ali that r4 was a start-up company entering a competitive market, and that he was not interested in any compensation package based on an independent contractor relationship or based on straight commission.  Subsequently, Ali contacted the plaintiff by phone, and represented that r4's product was unique and would give r4 a competitive advantage, that r4 had funding of $100 million, and that the plaintiff could get a guaranteed compensation package for the first six months of employment that would guarantee him $75,000.00 plus benefits (including health insurance, a 401(k), and a car allowance).

At the behest of Ali, the plaintiff agreed to meet him in Atlanta on September 1, 2009.  At that meeting, Ali urged the plaintiff to accept the sales position with r4.  The plaintiff explained his current employment with Zonare and Medcomp, and reiterated the same concerns regarding compensation that he had expressed previously.  Ali then reiterated the representations he had previously made to the plaintiff regarding the uniqueness of r4's product and the compensation package.  Ali also represented that the plaintiff would be eligible for group health insurance with r4.  The plaintiff decided to accept employment based on these representations.

Once the plaintiff returned to Birmingham, he found that Ali had emailed him an offer of employment letter from r4, which he signed and returned.  Alford asserts that the letter set forth the guaranteed compensation package that had been represented to him.  However, the defendants assert that the offer letter was for at-will employment.  (Doc. 9).

Towards the end of September 2009, the plaintiff learned that r4 was discontinuing and

terminating any and all existing compensation plans, and converting all sales representatives to the status of independent contractors. The plaintiff was also told that if he did not sign a new contract immediately acknowledging this compensation change, his employment would be terminated. The new compensation plan proposed a reduction in compensation, and the plaintiff alleges that the plan is contrary to the previous representations made to him, and contrary to the original employment contract.

Subsequently, the plaintiff learned that r4 would be out of money by the end of the year if the sales representatives did not make the requested compensation changes, and that r4 had been planning to implement this new compensation structure for months. The plaintiff also learned that the financial condition of the company was contrary to the representations made to him, and that the unique property of r4's products was only exclusive to r4 for twelve more months.

After attempting to negotiate with Ali regarding his compensation, the plaintiff refused to sign a new contract, and on October 16, 2009, the plaintiff's employment with r4 was terminated.

## II.   RULE 12(c) MOTION TO DISMISS

### A.   Standard

The FEDERAL RULES OF CIVIL PROCEDURE provide that "[a]fter the pleadings are closed, but early enough not to delay a trial, a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Eleventh Circuit has explained that "[j]udgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1315 (S.D. Ala. 2003) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)). When considering a 12(c) motion, a court must accept the facts

alleged in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id*. (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Furthermore, dismissal pursuant to Rule 12(c) is proper only where after reviewing the pleadings and attached exhibits it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations therein. *Id*. (citing *Horsley*, 292 F.3d at 700).

      B.      **Breach of Contract Claim**

The plaintiff alleges that he and r4 entered into an employment agreement that guaranteed him certain benefits, but that r4 breached this agreement. (Doc. 1 at 12, ¶ 35). The plaintiff argues that the terms of his employment are memorialized in the offer letter (doc. 1 at 6, ¶ 17), while the defendants argue that the offer letter "unambiguously identifies that [Plaintiff's] employment with r4 was 'at-will.'" (Doc. 9-3 at 9). The issue for this court is whether the plaintiff's employment letter set out at-will or some other form of employment as a matter of law. If the court finds that the letter is ambiguous concerning the type of employment, then parole evidence may be considered.

Whether a contract is ambiguous is a question of law for the court. *South Trust Bank v. Copeland One, LLC*, 886 So. 2d 38, 41 (Ala. 2003); *see also Ex parte Gardner v. State Farm Mut. Ins. Co.*, 822 So. 2d 1211, 1216 (Ala. 2001). When interpreting a contract, words must be given their ordinary meaning. *Gardner*, 822 So. 2d at 1217. When a contract defines a term, the term shall be given the meaning contained in the contract. *See Apel Machine & Supply Co. v. J.E. O'Toole Eng'g Co.*, 548 So. 2d 445, 448 (Ala. 1989). "When any aspect of a contract is capable of more than one meaning, it is considered ambiguous." *South Trust Bank*, 886 So. 2d at

5

43 (quoting *Voyager Life Ins. v. Whitson*, 703 So. 2d 994, 948 (Ala. 1997)).  Finally, when the terms of a contract are ambiguous, parole evidence may be considered to vary the terms of that agreement.  *See Envtl. Sys., Inc. v. Rexham Corp.*, 624 So. 2d 1379, 1381 (Ala. 1993).

The defendants argue that "the precise language of the offer letter state[s] that [the plaintiff's] position would be an 'at-will exempt position.'"  (Doc. 9-3 at 10).  "Moreover, [the defendants argue], immediately preceding his acceptance of the offer, Alford acknowledged his understanding that his employment with r4 Vascular was 'at will.'" (*Id*. at 10-11).  In contrast, the plaintiff asserts that the letter contract "specifically defines the term 'at will' to be something entirely different" than the typical situation where employment "may be terminated by either party with or without cause or justification."  (Doc. 12 at 3).

The precise language of the offer letter states on page one that "[t]his position is an at-will exempt position, *which means you are paid for the job and not by the hour*. *Accordingly, you will not receive overtime pay if you work more than 8 hours in a workday or 40 hours in a workweek*."  (Doc. 9-2 at 1 (italics added)).  On page two, it states, "The provisions of this agreement regarding 'at will' employment may only be modified by a document signed by you and an authorized representative of the Company." (*Id*. at 2).  Just above the signature line on the last page, the letter agreement provides, "I agree to and accept employment with r4 Vascular, Inc., on the terms and conditions set forth in this agreement.  I understand and agree that my employment with the Company is *at-will*." (*Id*. at 3 (italics added)).

The court finds that the letter agreement is not ambiguous for a number of reasons.  First, the use of the term "at will exempt" followed by the further description "*which means you are paid for the job and not by the hour. Accordingly, you will not receive overtime pay if you work*

*more than 8 hours in a workday or 40 hours in a workweek*," does not change the "at will" nature of the employment. (Doc. 9-2 at 1 (italics added)). At most, it clarifies that the plaintiff is not an hourly employee, but is salaried for the duration of his employment. Second, the letter agreement does not set forth a "clear and unequivocal offer of lifetime employment or employment of [a] definite duration." *Ex parte Michelin*, 795 So. 2d at 677.

To the extent that the plaintiff argues that the second paragraph of the contract guaranteed compensation of "$12,500.00 monthly '[f]or the first six months of your employment or until February 1, 2010....'," the court disagrees. (Doc. 12 at 7-8). This is not a guarantee of employment so as to transform an "at will" relationship to a contract for a definite duration. This language does nothing more than tell the plaintiff what and how he will be paid during the first six months. It does not create "a clear and unequivocal offer of ... employment of definite duration."[1] *Ex parte Michelin*, 795 So. 2d at 677.

C.  **Misrepresentation/Promissory Fraud Claims**

The plaintiff next alleges that r4 and Ali, individually and on behalf of r4, made misrepresentations to him that he (the plaintiff) relied on in accepting employment with r4. (Doc. 1 at 12, ¶ 37). The alleged misrepresentations are (1) that the plaintiff would receive a guaranteed compensation package for six months, (2) that r4's vascular access devices were coated with a unique proprietary coating that would give them a competitive advantage for several years, (3) that the products using the proprietary coating would be approved and into the market for sale by the end of February 2010, (4) that r4 had funding from its investors in the

---

[1] The court notes that it has considered the *Pranzo v ITEC, Inc.*, 521 So. 2d 983 (Ala. 1988) and *Condelles v. Alabama Telecastes, Inc*., 530 So. 2d 201 (Ala. 1988) cases cited by the defendants, but finds them to factually distinguishable from the situation presently before the court.

range of $100 million dollars, and (5) that plaintiff would be eligible for group health insurance with r4 on September 1, 2009. (Doc. 1, Complaint (Ex. A) at 5, ¶ 15). The defendants initially argue that the plaintiff's at-will employment, combined with the merger provision[2] in the offer letter supercedes any alleged prior representations, negotiations, and agreements, thereby negating the plaintiff's claim for fraudulent misrepresentation and suppression. (Doc. 9-3 at 15). The plaintiff argues that the merger clause does not negate his fraud claims as a matter of law. (Doc. 12 at 8).

The defendants primarily rely on *Gardner v. State Farm Mut. Auto. Ins. Co.*, 822 So. 2d 1201, 1208 (Ala. Civ. App. 2001), in support of their position. In *Gardner*, the plaintiff employee argued that the employment agreement had been altered by statements allegedly made to her at the time the document was executed. The *Gardner* court found that because the terms of the employment agreement were clear and unambiguous, they could not be altered by parole evidence. *Id*. The court specifically found that the combination of (1) a clear and unambiguous employment agreement, and (2) a merger clause, rendered the employee's claim, that the agreement was altered by statements made prior to the agreement, unpersuasive. *Id*. The court stated:

> A "merger" or "integration" clause such as this one is used to ensure that all

---

[2] The merger provision in the present case states that:

> This agreement and the non-disclosure and stock option/warrant agreement referred to above constitute the entire agreement between you and the Company regarding the terms and conditions of your employment, and they supersede all prior or contemporaneous negotiations, representations or agreements between you and the Company. The provisions of this agreement regarding "at will" employment may only be modified by a document signed by you and an authorized representative of the Company.

(Doc. 9-2 (Ex. A) at 2).

> preliminary negotiations, whether oral or written, are merged into the final executed agreement. *Infiniti of Mobile, Inc. v. Office*, 727 So. 2d 42, 46 (Ala. 1999). These agreements are enforceable in Alabama. *Id*. Because we consider the Agent's Agreement to be clear and unambiguous, and thus that its terms are not subject to being altered by parol evidence, and because of the effect of the merger clause, we are not persuaded by Gardner's claims that the agreement was altered by any statements that may have been made to her at the time she executed the agreement.

*Id*. at 1208.

Applying *Gardner* to the present situation, the defendants' argue that the plaintiff's "fraud claim should be dismissed because: (1) he [(the plaintiff)] was an at-will employee under Alabama law and; (2) the offer letter contained a merger clause, which in the context of at-will employment agreements has been interpreted by Alabama courts to establish that an employee cannot rely on any alleged fraudulent statement relating to the terms found in an employment agreement." (Doc. 14 at 6-7; *see also* doc. 9-3 at 17). However, as discussed below, the matter is not as straight-forward as suggested.

The plaintiff relies principally upon *Downs v. Wallace*, 622 So. 2d 337 (Ala.1993). In *Downs*, the Alabama Supreme Court discussed whether an integration or merger clause made reliance on representations outside of the written agreement unjustifiable as a matter of law. The facts in *Downs* were that purchasers of a feed and seed business brought an action against the broker and his corporation for fraud, alleging that the broker had induced them to purchase the business by misrepresenting and suppressing facts about the former ownership, the income, and the profitability of the business. The trial court granted summary judgment for the broker. The Alabama Supreme Court reversed and remanded the case on the ground that the presence of an integration clause did not render the purchasers' reliance on alleged oral misrepresentations

9

unjustifiable or unreasonable as a matter of law. Specifically, the Court stated:

> ".... this Court has never held that an integration clause such as the one contained in the Downses' purchase agreement renders a party's reliance on oral representations unjustifiable, or unreasonable, as a matter of law. To the contrary, this Court has consistently held that although a written contract stipulates that there were no oral understandings not incorporated therein, such a stipulation does not foreclose a party, as a matter of law, from establishing his reliance on fraudulent representations that induced him to enter the contract.... This holding ensues from the rule that when an agreement has been induced by deliberate fraud, the written document reciting that agreement is void and is "of no more binding efficacy ... than if it had no existence, or were a piece of waste paper...."

*Id*. at 341 (citations omitted). The *Downs* Court went on to explain its reasoning:

> The policy behind permitting a party to establish his reliance on another's fraudulent inducements despite an integration clause in the written agreement has been well stated by the Massachusetts Supreme Court:
>
>> "In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in a multitude of frauds and in thwarting the general policy of the law."
>
> *Bates* [*v. Southgate*, 308 Mass. 170,] 182, 31 N.E.2d [551,] 558 [(1941)].... Thus, although a party who in fact relies upon fraudulent inducements in the face of an integration clause may be negligent in so doing, his negligence will not prohibit him as a matter of law from recovering for injuries intentionally inflicted upon him.[ ] To hold otherwise is to encourage deliberate fraud.

*Id*. at 341-42 (citations and footnote omitted).

Since Alabama law is controlling, the court begins with a discussion of the law of fraud.

The Alabama Supreme Court in *Ex parte Michelin* stated as follows:

> "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.  To prevail on a promissory fraud claim..., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."

*Id*. at 678-79; *see also Gardner*, 822 So. 2d at 1209 (citing *Pinyan v. Community Bank*, 644 So. 2d 919, 923 (Ala. 1994)).

The court is convinced, at least for purposes of a motion to dismiss, that the plaintiff has alleged sufficient facts to overcome the defendants' motion.  As noted by Senior United States District Court Judge James H. Hancock in *Wade v. Chase Manhattan Mortg. Co*., 994 F. Supp. 1369 (N.D. Ala. 1997), the fact that the plaintiffs therein were "at-will employees does not prevent them from maintaining their fraud claims." *Id*. at 1378.  Judge Hancock relied, at least in part, on *Kidder v. AmSouth Bank*, 639 So. 2d 1361 (Ala. 1994), wherein the Alabama Supreme Court recognized that a plaintiff "could maintain an action alleging fraud in the inducement of her employment based upon alleged misrepresentations as to her working conditions."[3]  *Id*. at 1364.  In *Kidder*, the court stated, in pertinent part:

> .... In this present case, however, the elements of fraud were met when Kidder gave up her former employment, having agreed to work for AmSouth based on its alleged misrepresentations.  Notably, in *Smith v. Reynolds Metals Co*., [497 So. 2d 93 (Ala. 1986),] this Court held that the plaintiff, as an employee at will, had no breach of contract claim even though she was allowed to pursue a fraud claim.

---

[3]The undersigned also notes that another judge of this court, Chief United States District Judge Sharon Blackburn, has held that an employee could not bring a promissory fraud claim due to the fact of his status as an at-will employee at the time he was hired and at the time of the status change because he could not show he suffered actual injury since the employment could be terminated at any time for any reason, or for no reason.  *Stutts v.Sears, Roebuck & Co*., 855 F. Supp.  1574, 1582 (N.D. Ala. 1994).  This case is factually distinguishable from the present instance in that the employee in *Stutts* was already an at-will employee at the time of the representations.

> We hold that Kidder may maintain an action alleging fraud in the inducement of her employment based upon alleged misrepresentations as to her working conditions. We will not address the merits of the alleged misrepresentations.

*Kidder*, 639 So. 2d at 1363.

The defendants also contend that the plaintiff has failed to satisfy the reliance prong concerning his fraud claim. The defendants contend that under Alabama law, a motion to dismiss should be granted "where undisputed evidence indicates that the party claiming fraud in a particular transaction was fully capable of reading and understanding the documents, but chose instead to deliberately ignore written contract terms." (Doc. 9-3 at 19) (citing *Gardner*, 822 So. 2d at 1209). The defendants further contend that because the offer letter unambiguously provided for at-will employment, and because it contained a merger clause, the plaintiff can not reasonably rely on prior statements made by the defendants. They cite *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), *Gardner*, and *Pranzo* to support their contention. (Doc. 9-3 at 18-19).

In *Foremost*, the court specified the appropriate standard in determining the reliance prong for fraud claims. It held that the reliance must be reasonable under the circumstances. 693 So. 2d at 421. Specifically, the Court stated, in pertinent part:

> .... The "reasonable reliance" standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the "reasonable reliance" standard will once again provide a mechanism, which was available before *Hickox* [*v. Stover*, 551 So. 2d 259 (Ala.1989)], whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made

a deliberate decision to ignore written contract terms.

*Foremost*, 693 So. 2d at 421.  Although it is undisputed that the plaintiff possessed the ability to read and understand the letter agreement in this case, the court is disinclined at this juncture to grant the defendants' motion.

### D. Fraudulent Suppression

The plaintiff also claims that the defendants suppressed information that r4 "had no intent on allowing Alford ... to operate under the employment contract" and that the defendants "intended to change the compensation structure shortly after they got [the plaintiff] ... under contract."  (Doc. 1 at 13, ¶ 41).  Under Alabama law, to establish a claim for fraudulent suppression, a plaintiff must show (1) that the defendants had a duty to disclose material facts; (2) that the defendants concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced Plaintiff to act or to refrain from acting; and (4) that the defendants' action resulted in harm to the plaintiff.  *Penmont, LLC v. Blue Ridge Piedmont, LLC*, 607 F. Supp. 2d 1266, 1271-72 (M.D. Ala. 2009).

The defendants' sole contention in the motion to dismiss is that, as a matter of law, they did not have a duty to disclose the purported information.  (Doc. 9-3 at 20-21).  The defendants correctly point out that a court may consider numerous factors when determining if a duty to disclose exists, including: (1) The relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.  *Beiersdoerfer v. Hilb, Rogal, and Hamilton Company*, 953 So. 2d 1196 (Ala. 2006); *Freightliner, LLC v. Whatley Contract Carriers, LLC*, 932 So. 2d 883, 891 (Ala. 2005).  The plaintiff counters that a duty to disclose -

that the defendants intended to change the compensation structure and not allow him to operate under the employment contract - existed because the plaintiff had no opportunity to discover the information suppressed, the information suppressed was material and valuable to the plaintiff's decision to sign the agreement, and that the plaintiff would not have left his previous employment had it not been for this failure to disclose. (Doc. 1 at 13, ¶ 41-43).

Premised on the factors the court must consider in an instance such as this, it is hesitant to grant the defendants' motion at this early stage of the proceedings.[4] *Beiersdoerfer*, 953 So. 2d 1196 (Ala. 2006). Therefore, the court finds the plaintiff's allegations sufficient at this juncture. Therefore, to the extent that the plaintiff's claim of fraud is premised on assertions that the information was fraudulently suppressed, the motion is due to be denied.

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Standard

The plaintiff bears the initial burden of alleging personal jurisdiction by pleading sufficient facts to establish the basis for the exercise of such jurisdiction. *Mercantile Capital, LP v. Federal Transtel, Inc.*, 193 F. Supp. 2d 1243 (N.D. Ala. 2002) (citing *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir. 2000)). If the plaintiff

---

[4] By way of example, the court notes that in *Beiersdoerfer*, the court found that the plaintiff had set forth a claim for fraudulent suppression that should have been submitted to the jury. Specifically, the court stated:

> Regardless of [the employee's] sophistication in the insurance-brokering business, he had no opportunity to ascertain this suppressed information; it was known only to the upper management of [the insurance company], who suppressed it. The suppressed information was obviously valuable. Accordingly, we hold that [the insurance company] owed a duty to [the employee] to disclose its intent not to honor the oral agreement.

953 So. 2d at 1208. The defendants argue that this case is distinguishable because the agreement at issue was a consulting contract between an insurance company and its former employee. (Doc. 14 at 8). Although factually distinguishable, for purposes of the present motion, the court finds *Beiersdoerfer* instructive.

satisfies this requirement, the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present. *Id*. at 1247. If the defendant meets that burden, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, though the plaintiff may not merely reiterate the factual allegations of the complaint. *Id*. The plaintiff, however, bears the ultimate burden of establishing that personal jurisdiction is present. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) (citation omitted).

Deciding whether personal jurisdiction exists requires a two-step inquiry. First, the court must determine that such an exercise of jurisdiction is appropriate under the forum state's long-arm statute. *See Mutual Service Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *see also United Technologies Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009). Second, the court must determine that the exercise of personal jurisdiction over the defendant would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that a defendant have certain "minimum contacts" with the forum state, and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Id*.; *see also United Technologies*, 556 F.3d 1260. Only when both requirements are satisfied will a court have personal jurisdiction.

B.   **Motion to Stay Ruling on Motion to Dismiss Under Rule 12(b)(2)**

Defendant Ali, pursuant to Rule 12(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, seeks dismissal of the plaintiff's claims premised on a lack of personal jurisdiction. (Doc. 8). In order for this court to have personal jurisdiction over a nonresident defendant, the exercise of such jurisdiction must not violate the Fourth Amendment to the United States Constitution,

which requires that a defendant have certain "minimum contacts" with the forum state, and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Frit Indus.*, 358 F.3d at 1319. Defendant Ali contends that the plaintiff can not demonstrate that he has the requisite "minimum contacts" to warrant exercise of this court's jurisdiction in this instance. (Doc. 8-2).

The plaintiff has filed a motion to stay a ruling on Ali's motion in order to allow him to conduct discovery on the jurisdictional issue. (Doc. 13). The plaintiff notes that without the opportunity to depose Ali, the plaintiff contends that he is not in a position to refute the statements made in defendant Ali's affidavit (doc. 8-1), or offer other evidence that may be known only to defendant Ali. (Doc. 13 at 2, ¶ 3). Defendant Ali does not oppose the plaintiff's request to stay this court's ruling. (Doc. 15).

It is settled that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The Eleventh Circuit has established "that jurisdictional discovery is highly favored before dismissing a defendant for want of personal jurisdiction." *Supreme Fuels Trading FZE v. Sargeant*, 2009 WL 5128504, *5 (S.D. Fla. 2009) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982)). Accordingly, the plaintiff's motion to stay this court's ruling on Ali's motion to dismiss for lack of personal jurisdiction in order to conduct discovery is moot since the defendants correctly do not oppose conducting the necessary discovery.

IV.   **CONCLUSION**

Premised on the foregoing, the defendants' motion to dismiss (doc. 9) is due to be granted in part and denied in part, Ali's motion to dismiss for lack of personal jurisdiction (doc. 8) is due

to be dismissed without prejudice and the plaintiff's motion to stay Ali's motion to dismiss (doc. 15) is moot to the extent the parties may conduct the agreed upon discovery on the jurisdictional issue prior to the refiling or disposition of any subsequent motion to dismiss on jurisdictional grounds.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 20th day of October, 2010.

*/s/ John E. Ott*
**JOHN E. OTT**
United States Magistrate Judge